[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
This uninsured motorist claim results from a two-car accident which occurred on October 16, 1991, on Foxon Boulevard in New Haven. At the time a vehicle driven by Richard Rodriguez, and owned by Auto Aid, Inc., allegedly crossed the center line of Foxon Boulevard, and struck the vehicle being operated by the claimant. Mr. Rodriguez was cited for failure to operate his motor vehicle in the proper lane. The claimant settled the liability portion of her claim with Patriot General Insurance Company which insured the owner of the fault vehicle for its full liability limits of $20,000.00. In exchange of this payment the claimant executed and issued a general release for $20,000.00, releasing both the owner of the vehicle and the driver of the vehicle.
At the time of the accident the driver of the vehicle, Mr. Rodriguez, was insured for liability coverage by I.T.T. Hartford Policy No. 79EZ917367. For some reason this policy seems to be referred to by various names including Twin City Fire insurance. Nevertheless, it appears clear that Mr. Rodriguez had but one policy in effect at the time of the accident.
It is undisputed that the claimant exhausted the liability coverage available under the owner's policy by receiving the full $20,000.00 from Patriot General on its policy. It is equally clear CT Page 1066 that the claimant released the operator and received no payment as a result of the operator's I.T.T. Hartford policy.
The majority of the arbitration panel found that the claimant was entitled to no recovery under her own underinsured motorist policy because in their opinion the case was controlled by Continental Insurance Company v. Cebe-Habersky, 214 Conn. 209
(1990). The claimant and the claimant's dissenting arbiter would argue that the case is not controlled by Cebe-Habersky, but rather is controlled by General Accident Insurance Company v. Wheeler,221 Conn. 206 (1992).
ISSUES
I. Did the I.T.T. Hartford policy provide coverage which was available to the claimant in this case?
II. Was the claimant entitled to ignore the I.T.T. coverage, if available, in accordance with the rationale of General Accident Insurance Company v. Wheeler.
DISCUSSION
Relying on American Universal Insurance Company v. DelGreco,205 Conn. 178 (1987), the claimant would argue that the arbiters should never get to the question of the exhaustion of the I.T.T. Hartford policy. The claimant argues that DelGreco stands for the proposition that she must exhaust the coverage on the covered vehicle and that she is not required to look to other coverage which may be available because of a liability policy carried by the operator of the covered vehicle. The claimant also makes claims concerning primary and excess coverages.
The real issue faced by the Supreme Court in DelGreco concerned the relationship between Dramm Shop insurance and underinsured motorist coverage. In DelGreco the court held, at page 194:
 "For purposes of this section an `underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under which the CT Page 1067 uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section." [Emphasis Supplied]
The Court further held that in addressing the claim in DelGreco:
 "The comments indicate a legislative intent that underinsured coverage is triggered when the tortfeasor's automobile liability coverage is exhausted."
DelGreco, at 195-196.
When one cuts through the statutory analysis in DelGreco, the holding is relatively simple. Dramm Shop coverage is not automobile liability coverage and, accordingly, under the statutes and regulations, is not a coverage which enters into the formula in determining the relationship between automobile liability coverage and underinsured motorist coverage. While it may be true that Dramm Shop coverage was available to the claimant in DelGreco, and in fact the policy appears to have been paid to the claimant, it did not reduce the claimant's underinsured claim because it was not a payment based upon the type of policy, i.e. an automobile liability policy which enters into the comparison between available liability coverage and underinsured coverage.
The court holds that when the claimant in the instant case tries to focus on the Supreme Court's language, "on the tortfeasor's motor vehicle", and limit the available liability policies to only those motor vehicle accident policies which cover the vehicle and not those policies which cover an operator, it is reading DelGreco too narrowly. It appears to this court that the purpose in DelGreco is to exclude from underinsured motorist controversies considerations of insurances which are not motor vehicle liability policies or underinsured motor vehicle policies. The court holds that the I.T.T. Hartford policy was available to the claimant in the instant case.
Notwithstanding the court's holding that the I.T.T. Hartford policy was available, the court must determine under General Accident Insurance v. Wheeler, 221 Conn. 206, whether or not the claimant had any obligation to exhaust the I.T.T. policy. In Wheeler, the Supreme Court held: CT Page 1068
 "The sole issue raised in this appeal is whether an insured, where there is more than one tortfeasor responsible for the accident, may recover under his or her uninsured motorist policy before first exhausting the liability insurance policies of all the tortfeasors. We conclude that an insured is required to exhaust the liability insurance coverage of only one tortfeasor in order to recover underinsured benefits."
Wheeler, at 207.
Factually, Wheeler presented a three-car accident in which the claimant had a potential personal injury claim not only against the vehicle which struck him, but also against a parked vehicle whose headlights were claimed to have blinded the driver of the striking vehicle. The clear sense of the Wheeler decision when read in its entirety, is that a plaintiff need not pursue marginal claims against questionable defendants before the plaintiff's underinsured motorist coverage comes into play. Regardless of the rationale for the Wheeler decision, the court has unequivocally held that it is sufficient to exhaust liability against one of multiple tortfeasors in order to create a right of action under underinsured motorist.
In Wheeler, the plaintiff would have brought an action against the offending vehicle in which the plaintiff essentially claimed that the operator of the offending vehicle failed to keep his vehicle under control. If the plaintiff had brought an action against the parked vehicle, he would have had to fashion a cause of action out of the claim that either the parking was illegal or the use of the headlights at that time was negligent. The two claims would have been totally independent of each other and success on one would have borne no relationship to success on the other. In the case before the court, the only difference between a claim against the operator and a claim against the owner would be a question of the permitted use of the vehicle. There appears to be no issue in the instant case concerning permitted use and, therefore, the plaintiff's cause of action against the two defendants would be identical but for an additional paragraph in the second count claiming permitted use.
It also appears to be uncontested that the owner's liability is based upon his status as the owner and the Connecticut Financial CT Page 1069 Responsibility laws and is not vicarious liability produced because the operator was on an errand as the agent of the owner.
The fact situation presented in the instant case would appear to be a relatively common fact situation where the owner of a vehicle is insured and an operator using the vehicle for the operator's purposes with the permission of the owner is likewise insured. The question then becomes whether the owner and the operator are each a tortfeasor so that in accordance with the Wheeler holding the claimant need exhaust against one or the other but not both or whether there is a single tortfeasor, the operator, although there are multiple policies "applicable at the time of the accident" and includable under DelGreco.
Section 36a-336 (b) provides:
 "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage. [emphasis supplied]"
It is the holding of the court that both the Patriot General and the I.T.T. Hartford policies were bodily injury insurance policies applicable at the time of the accident and, accordingly, each was required to be exhausted in accordance with the Cebe-Habersky holding. While the court recognizes that non-automobile policies need not be exhausted, DelGreco, and the automobile policies of multiple tortfeasors need not be exhausted, Wheeler, the instant case, fits neither description. The court does not find the owner to be a tortfeasor. Neither does the court find the owner to be vicariously liable or to be subject to imputed negligence in the normal meaning of those terms. The court well recognizes the owner's responsibility under the financial responsibility laws, but that responsibility is a matter of public policy. The court recognizes that in the last century several new concepts of tort liability have arisen in which fault is imputed to CT Page 1070 the owner under principles of vicarious liability. See "Imputed Negligence Revisited", 45 Conn. Bar Journal 195. Nevertheless, a tortfeasor is a wrongdoer who commits or is guilty of a tort. Black's Law Dictionary, at page 166. The owner of a vehicle, at least in the absence of an agency relationship in which the operator is on the owner's mission, is not vicariously liable nor is he a tortfeasor. He is simply liable as a matter of a public policy embodied in a statute.
Since the court agrees with the majority of the arbitration panel that underinsured motorist coverage was not available, the argument concerning the no-fault credit for the $1,666.66 becomes moot.
The court finds that as to paragraph 1, Exhibit A, the majority of the arbitrators erroneously changed the wording of the stipulated Exhibit 1 from "owner/tortfeasor" to "insured". The court has considered the question of whether the stipulation that the owner was a tortfeasor, or at least the identification of the owner as the "owner/tortfeasor", makes the owner a tortfeasor for purposes of the Wheeler analysis. Returning to DelGreco, the court notes that the Supreme Court held:
 "Accordingly, we hold, where judicial review of compulsory arbitration proceedings required by 38-175c(a)(1) is undertaken under General Statute 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators."
DelGreco, at 191.
Following at least the spirit if not the letter of the DelGreco holding, the court finds that it is for the court to determine whether the operator was a tortfeasor within the meaning of Wheeler, and even if a stipulation were entered into identifying the operator as a tortfeasor, the legal conclusion of the operators's status is not binding on the reviewing court. Accordingly, while recognizing that the majority of the arbiters appear to have changed the stipulation and that they are without authority to make such a change, the stipulation as to tortfeasor status is irrelevant to the court's conclusion that the case before it is controlled by Cebe-Habersky and not by Wheeler.
The arbitration award is affirmed.
Kevin E. Booth, Judge CT Page 1071